IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                      Case No.  23-10010-JWB

MARKEECE ANDERSON,

Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on the government's appeal of the magistrate's order of release, and its motion for detention.  (Doc. 15.)  The court held a hearing on March 15, 2023, and took the matter under advisement.  For the reasons stated herein, the government's motion for detention (Doc. 15) is GRANTED and the magistrate judge's order of release (Doc. 14) is REVOKED.

## I.    Facts

On February 22, 2023, a grand jury returned a two-count indictment against Defendant. Both counts charge Defendant with sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1).  (Doc. 9.)  The parties agreed to proceed by proffer at the hearing.  The government proffered facts relating to the alleged offenses as follows.

On May 18 2022, the Wichita Police Department's ("WPD") vice section was conducting an operation to target commercial sex enterprises.  During that operation, WPD detectives contacted an individual who was advertising commercial sex online and negotiated a commercial sex transaction with that individual.  The detectives arranged a meeting at a hotel.  At the hotel, detectives arrested a female who is identified as Jane Doe in the indictment.  After being arrested,

Jane Doe informed detectives that she had left a dog in her vehicle.  Detectives went to the vehicle to let the dog out.  When checking the vehicle, they found Defendant hiding in the trunk.  Defendant was arrested for the sale of sexual relations and possession of narcotics.  Detectives also seized cellular phones during the arrest of both Defendant and Jane Doe.  Law enforcement searched the phones pursuant to warrants.  The evidence from those phones established that Defendant and Jane Doe were at various hotels in the city of Wichita on the same dates and included text messages between individuals and Defendant and Jane Doe coordinating meetings for commercial sex encounters at various hotels.  Jane Doe was also interviewed by detectives but did not disclose any allegation of abuse, fraud, or coercion by Defendant.

On February 7, 2023, WPD vice again conducted an operation targeting individuals who were engaging in commercial sex.  Again, detectives made arrangements in response to an online advertisement for sex.  Detectives were told to go to a hotel and to a specific room at the hotel.  Detectives arrived at the hotel and approached Defendant who was outside of the hotel.  Defendant was arrested on outstanding warrants and law enforcement seized his phone.  Detectives made contact with Jane Doe outside the room specified in the prior communications and placed her under arrest.  While at the hotel, Jane Doe gave detectives permission to look at her phone.  The phone contained messages directing her where to go, the sex acts that were negotiated, and the rates.  Detectives then called the number that was listed on the online advertisement causing Defendant's phone to ring.

Jane Doe was again interviewed by law enforcement.  During the interview, she stated that Defendant had been coercing and forcing her to engage in commercial sex in both Texas and Kansas.  During the preceding four years, Defendant initially promised Jane Doe a lavish lifestyle but when she later objected to continuing in commercial sex Defendant physically abused her and

coerced her to continue.  Jane Doe had several images on her phone showing injuries that she allegedly received at the hands of Defendant.  Some of those images were provided to the court in the government's motion and reflect injuries that occurred from December 2021 to October 2022. (Doc. 15 at 4–5.)  Jane Doe reported that Defendant had previously choked her until she was lightheaded, slapped her, ripped piercings from her chest, and punched her.  According to Jane Doe, Defendant used this force to cause her to continue engaging in commercial sex.  During the hearing, the government offered evidence of a video recorded by Jane Doe on an unknown date which appears to show Defendant throwing a water bottle at her while they are in a hotel room. Evidence from Defendant's phone also included text messages discussing Plaintiff's injuries which she stated were inflicted by Defendant on an unknown date.  According to the government, the images and videos on Jane Doe's phone spanned over a period of time and some of the recordings were made prior to the arrests in May 2022.

In response, Defendant proffered that he and Jane Doe had been in a relationship for the past four years and that Jane Doe had been engaged in commercial sex prior to their relationship. Defendant challenges Jane Doe's credibility with respect to her injuries and suggests that they were the result of a third party or "some other method."  Defendant contends that Jane Doe's report of abuse is not credible because she did not inform law enforcement in May 2022 that Defendant was forcing her to commit sex acts under fraud, abuse, or coercion, but that she only provided that reason after her second arrest.

Based on a complaint filed in this case, Defendant was arrested on February 9, 2023. Defendant was detained upon the government's motion at his initial appearance.  (Doc. 6.)  After the indictment was returned, Defendant appeared for arraignment and the government moved for detention pending trial.  The magistrate judge ordered that Defendant be released pending trial

3

under various conditions.  The government now seeks revocation of the order of release and an order that Defendant be detained pending trial.

## II.      Standard

Pursuant to 18 U.S.C. § 3145(a)(1), the government may seek review of a magistrate judge's order of release.  The district court's review of a magistrate judge's order of release is de novo. *United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th Cir. 2003). A de novo evidentiary hearing, however, is not required. The district court may either "start from scratch and take relevant evidence or incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted." *United States v. Collier*, No. 12-20021-09, 2012 WL 4463435, at *1 (D. Kan. Sept. 27, 2012) (citing *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991)). The Federal Rules of Evidence do not apply to detention hearings.  *See* 18 U.S.C. § 3142(f).  The court may allow the parties to present information by proffer or it may insist on direct testimony. *See id.*

Under the Bail Reform Act of 1984, the court must order a defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the court must take into account the available information concerning

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, [or] a violation of section 1591...;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including-

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Bail Reform Act provides a rebuttable presumption of risk of flight and danger to the community when a defendant is charged with an offense under chapter 77 for which a maximum term of imprisonment is 20 years or more. *See* 18 U.S.C. § 3142(e)(3)(D). Here, Defendant is charged with an offense under that chapter and the maximum term of imprisonment is life. *See* 18 U.S.C. § 1591(b)(1). "A grand jury indictment provides the probable cause required by the statute to trigger the presumption." *United States v. Walters*, 89 F. Supp. 2d 1217, 1220 (D. Kan. 2000) (citing *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990)).

The burden of production on Defendant to overcome the presumption is not a heavy one, but Defendant must produce some evidence. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991). Even if Defendant overcomes the presumption, the presumption remains a factor in the court's detention decision. *Id*. The burden of proof remains with the government to show that no condition or combination of conditions would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community. *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002) (burden of persuasion regarding risk of flight and danger to community always remains with government). The government must prove dangerousness to any other person or the community by clear and convincing evidence. *Id*. at 1252

## III.   Analysis

### A. Nature and Circumstances of the Offense

In reviewing this factor, the court is to consider the nature and circumstances of the offense charged, including if it is a crime of violence or a violation of § 1591.  The offense charged in both counts is a crime of violence as it involves the alleged physical abuse of Jane Doe and a felony under chapter 77.  *See* 18 U.S.C. § 3156(a)(4).  Further, the offense is sex trafficking under § 1591 which further weighs in favor of detention.  Such offenses are particularly serious given that they involve victimization and forced sexual trafficking.  The allegations here are that Defendant abused the victim over a period of time and in both Texas and Kansas.  Such conduct indicates that Defendant's release would pose a high degree of danger to others in the community, particularly to Jane Doe or other vulnerable women.  This factor weighs in favor of detention.

### B. Weight of the Evidence

The government's proffer indicates the weight of the evidence as to Defendant's involvement in sex trafficking is strong.  Notably, Defendant did not challenge his involvement in sex trafficking.  Rather, the contested issue is whether Defendant did so knowing that "means of force, threats of force, fraud, coercion...or any combination of such means will be used to cause [Jane Doe] to engage in a commercial sex act."  18 U.S.C. § 1591(a).  The government's evidence concerning this element hinges on the credibility of Jane Doe.  Although there is some evidence of physical abuse from the text messages and the video, evidence that the force, fraud, or coercion was done to **cause** Jane Doe to engage in commercial sex is likely to come from Jane Doe's testimony.  Defendant challenges her credibility by pointing to the fact that she was engaged in commercial sex acts before their relationship began and because she failed to disclose the alleged force or coercion during her police interview in May 2022.  Defendant has certainly pointed out that Jane Doe has potential credibility issues that can be addressed on cross-examination.

However, the government has proffered that Jane Doe will testify as to the events and the evidence from the phone appears to support her testimony.

After review of the proffered evidence, the court finds that this factor is neutral based largely on the key role that witness credibility will play in the decisive question of whether Defendant forced or otherwise coerced the victim to engage in commercial sex.

### C. History and Characteristics of Defendant

Defendant is thirty years old and has lived in the Wichita area most of his life. Defendant has support from family and friends including a mentor, Clifton Fisher, who has offered to have Defendant live with him while on bond and assist in helping Defendant obtain employment. Defendant reported that he recently returned to the Wichita area after living in Texas. Defendant is not employed and the bond report indicates that his last employment was approximately four years ago in Wichita, although Defendant self-reported that in Texas he was self-employed as a dog breeder and car detailer. Defendant reports an abysmal childhood that was very difficult. Although Defendant's ties to the area and community support weigh in favor of this factor and a finding that he is not a flight risk, Defendant's criminal history reflects repeated violations of the law, failures to appear for court proceedings, and noncompliance with conditions of probation.

Notably, in 2012, Defendant was convicted in this court of possession of a firearm by an unlawful drug user after entering a guilty plea. According to the presentence report, Defendant was compliant on bond while that case was pending. Defendant was then sentenced to three years' probation on April 30, 2012. The terms of probation included participating in substance abuse treatment, abstaining from alcohol, and prohibiting gang association and gang activities. According to the record, Defendant began violating his term of probation within three weeks of being sentenced. On May 20, 2012, Defendant was observed by officers leaving a disturbance at

7

a residence where shots were fired and he was in a vehicle with a known gang member.  In the following months, he had three more documented interactions with gang members and, on two occasions, those interactions involved shots being fired although Defendant was not a suspect in the shooting.  In March and May of 2013, there were additional violations of the gang condition. Defendant also had one conviction of driving while on a suspended license in September 2012 and was arrested for the same offense in April 2013 and was convicted in August 2013.  On September 24, 2013, Defendant admitted to these violations and was sentenced to nine months' imprisonment and three years' supervised release.  (Case No. 11-10189-1, Doc. 89.)  One day after sentencing, defense counsel filed a motion seeking to reopen the hearing.  (*Id.*, Doc. 90.)  In that motion, defense counsel advised the court that Defendant did not believe that he could be successful on supervision and asked the court to impose a higher sentence and no further supervision.  The court granted the motion as unopposed and amended the judgment to reflect a sentence of ten months' imprisonment and no supervision.  (*Id.*, Docs. 91, 92.)

Defendant's history of supervision by the United States' Probation Office supports a finding that Defendant would not comply with conditions placed on Defendant by this court should he be released on bond.  Defendant asserts that he would so comply and that the above-described conduct occurred when he was young.  While the court recognizes that this conduct was approximately ten years ago, Defendant's current criminal record and failures to appear for court proceedings confirms that the passage of time has not resulted in compliance with the law.  In 2015, Defendant was charged and convicted in Trego County with another violation of driving while suspended.  Notably, Defendant failed to appear in May 2015 and a warrant was issued.  In August 2015, Defendant was charged in Reno County with driving while a habitual violator.  He again failed to appear in October 2015.  In August 2016, he failed to appear in Wabaunsee County

on a charge that was ultimately dismissed.  In March 2019, he was charged with possession of marijuana in Tarrant County, Texas, and a warrant was issued for his arrest.  That charge remains pending.  In March 2022, he was charged in Sedgwick County with operating a motor vehicle without a valid license.  He failed to appear in June 2022.  In April 2020, he was charged by the City of Wichita with possession of marijuana or hallucinogenics.  Defendant failed to appear for a proceeding on that charge in August 2022 and a warrant was issued.

While these charges and related convictions are not violent crimes, they evidence Defendant's continued refusal to comply with the law.  Further, his repeated failures to appear give this court grave concern that Defendant will fail to appear in this court or more likely given his history with this court, Defendant will continue to refuse to abide by conditions imposed by this court.  Defendant's history shows that he is not amenable to supervision.  *See United States v. Gilliard*, 722 F. App'x 818, 820 (10th Cir. 2018) (affirming order of detention that was based in part on the defendant's repeated history of failing to appear which demonstrates the defendant's unwillingness to comply with the court).

Defendant's history and characteristics generally weigh in favor of detention

**D. Danger to the Community**

The court is required to order the pretrial release of a person subject to conditions unless the court determines that such release will endanger the safety of any other person or the community. *See* 18 U.S.C. § 3142(b).  "The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety to the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *4 (10th Cir. July 8, 2022).

Taken as a whole, the court finds that the available information concerning the § 3142 factors shows by clear and convincing evidence that Defendant's release would pose a danger to the community. Defendant is charged with sex trafficking by the use of force or coercion and the primary witness alleges that he threatened and physically abused her. While Defendant disputes the allegations of his use of force and coercion, he does not dispute that he was engaged in the commercial sale of sex over a significant time period. Defendants' alleged criminal conduct in this case (even if it does not ultimately amount to the charged conduct of sex trafficking by force or coercion), violations of conditions of probation in this court, continued criminal conduct in various jurisdictions and failures to appear all indicate that he is a danger to the community. The court finds that there are no conditions or combination of conditions that would reasonably assure his appearance at proceedings and the safety of the community if Defendant were released.

## IV.    Conclusion

The government has carried its burden of proving by clear and convincing evidence that there is no combination of conditions that would reasonably assure the safety of others and the community if Defendant were released pending trial, or that any such conditions would assure his appearance. The magistrate judge's order of release previously entered (Doc. 14) is accordingly REVOKED and the government's motion for detention (Doc. 15) is GRANTED.

Defendant Markeece Anderson is hereby committed to the custody of the Attorney General, pending trial, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel and, upon an order of a court of the United States or on request of an attorney for the government, the person in charge

of the corrections facility in which Defendant is held shall deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.  Dated this 16th day of March 2023.

                                                      __ s/ John W. Broomes_____
                                                      JOHN W. BROOMES
                                                      UNITED STATES DISTRICT JUDGE